Consolidated case 09-1911, Joseph Zangara et al. v. Advocate Christ Medical Center, Nepal Mr. Rastak Good morning, your honors. My name is Michael Rastak. I'm here on behalf of the plaintiff's appellants, Joseph Zangara and Wayne Adesio. This is the case in which two patients went into the hospital for elective surgery, one of which suffered a mercury methicillin-resistant staphylococcus aureus infections, one died, the other suffered injuries, brought to the hospital, and then the question became whether or not the hospital was required. Are you telling us what the facts are? Yes. We know the facts. The question is... You know this panel. I do, but I do not take anything for granted, your honor. In this instance, the question is whether or not the hospital is required to produce... There's a 622 issue. Did they waive it? Yes. Did they waive it? I'm not sure what your honor means if they waived it. Well, they raised it initially in their 216-19 motion to dismiss. The trial court apparently ignored it. Their argument was basically that it was a conditioned precedent to any discovery beyond the scope of the personal records. Correct. That was the first... Did the trial court pay any attention to that argument? No, not at all. I didn't think so. Did they say anything about it? No. Did they preserve the issue? I do not believe so. What you have to do to preserve an issue is always a close point. I believe the only issue before this court is the simple question that the trial court ruled upon, and that's whether or not... In the final order that was drafted, I presume by counsel for the prevailing side, the language contained in that dispositive order is the court is dismissing it because all of the materials you requested were privileged. Yes, sir. Didn't it say anything about 622? Not at all. And the final hearing on the case before the dismissal, the court was very clear in the reason it was giving for dismissing the case. In the final hearing, the court said the statistical information is privileged. That's my ruling. But in their brief, their opening volley in their brief, in response to your brief, is 622. Correct. And, in fact, 622 may have a role to play when we're addressing whether the cause of action can go forward as to the two individual doctors. Doctors as well. So maybe you should address that issue first. And the question with respect to the doctors, at least as I understand it... If you lose on the 622, you're not going anywhere with your argument about privileged documents or not privileged documents. You're wasting your time. So you really should address the 622 argument first, don't you think? Correct. Then you've come back to the other. I always... I'm just saying, if you flip flop your brief, that's a mistake. I was very clear on that one. The doctor's position, as I understand it... Well, let's just go to the 622. And I thought the 622 issue was whether or not the circuit court has discretion to allow for or to address a situation where the plaintiff claims that they cannot provide an affidavit and gives a good cause for that and whether the trial court can hold off on what the time limits are in the statute otherwise. I do not, and I still do not understand that that should be the issue before this Court. The issue that the trial court raised was solely the question of whether or not the information was privileged. Well, she acted as if she had that discretion, and she exercised that discretion. She did. And she did not dismiss any of the actions based on the failure to provide that. Exactly. And she got that discretion. The trial court judge got that discretion from Supreme Court Rule 201D, which is what the defendants cite the Woodard case. Woodard had some language in it that you can't delete. Filing the affidavit is a condition precedent to any discovery beyond his personal medical records. They may have waived it, I doubt it, but they may have waived it, but they've never abandoned that as a threshold question. You've got to address it, because if they win on that issue. Then we don't go anywhere. Exactly. I agree. And they cited the Woodard case in their brief and supported that proposition. Right. And as we explained in our reply brief, it's based upon Rule 201D. And Rule 201D says, unless leave of course granted. And in this case, the trial court gave us permission to seek this information. As a matter of fact, if you don't recall, it specifically told the hospital, count the cases and tell them what it is. Well, Mr. Riaszak, if we were to agree that as far as the MRSA information is concerned, that the court should have allowed the statistical information or the number of cases, you know, putting that to the side, do we affirm the dismissal of every other aspect of this complaint that did not have a 622 affidavit? I'm trying to think what the other aspects would be. The other aspects. Everything that there were other allegations of negligence. Allegations of the complaints? Yes. I mean, it's a. I'm sorry. I understand what your Honor said right now. My response to that is that because the trial court judge did not look, did not even look at that aspect of the case, the trial court judge only looked at the MRSA issue. Didn't she eventually dismiss this because there wasn't a 622 affidavit? No. She dismissed this. She ruled that we could not produce a 622 affidavit without the MRSA information, and therefore she was dismissing the case. Her actual ruling was that the information is privileged. Yes. And if there is some question that some of our allegations would stand and some of the allegations in the complaint would fall. That's what I'm asking. That should be done, I would think, upon remand, because if the trial court judge is going to address issue A, B, C, and D, we may either voluntarily drop them or we may seek leave to amend them. And if this court dropped them out, then we wouldn't have the advantage of seeking to amend them. When they moved to dismiss, weren't they moving to dismiss the complaint in its entirety? Yes, they did. And wasn't it based on, in part, the failure to provide the 622 affidavit? That was the original motion which was denied, and then we moved to the question of whether or not we could get the statistical information we needed to do the 2622 affidavit. But at some point, didn't she dismiss this for failure to have a 622 affidavit? No. No? Just strictly on the no privilege? No. That's what the trial court – I'm not saying it's right or wrong. That's what happened under the law. With respect to that order, you went through about a year worth of discovery, didn't you? Yes, exactly. And you took a deposition? Yes, of the nurse. The nurse? Exactly. When they drafted this order which dismissed the case because the trial court found, according to the order, that all of the – that's what my question is – all of the discovery you had requested was privileged? Everything that you had requested? Is that how you read it? That there wasn't anything in what you requested that was not privileged? That was the trial court's ruling. The trial court's ruling. It's a final verbal order. The reason I ask that is because I go back to your affidavit that you adopted. Sure. Paragraph 7. There are about four or five different little things that he suggests he needs. Do you read her order as encompassing everything there? It's not a trick question. I'm trying to think. What we said is – and I'm trying to – what we said when the trial court judge gave its oral ruling at the end, the judge said, all these documents are privileged. Was that everything she had before her? Yes. Now, there was some stuff in camera, wasn't there? That's what she was talking about, were the documents in camera. Okay. And she wasn't talking about what you had put in your amended affidavit, necessarily. No, no, no. From reading the transcript, the judge was talking about the documents that we haven't seen, that everybody else has seen. And our attorney said, we don't need the documents. We need the statistical information. And we don't – I don't know, but we don't even think the statistical information we want is in the documents that the court saw. I can't know that. Could I – could I – I'd like to interject. I'm looking at the orders of dismissal. One is handwritten. One is typed. They're two different times. They're two separate periods for some reason. But they're dated June 23rd, 2009, and June 24th. They say that the cause coming to be heard on Advocate Health and Hospital Corp. doing business as advocates, motion to dismiss pursuant to 2619, for failure to comply with 735 Illinois 622. Defendant's motion to dismiss is granted with prejudice. So am I missing something? The other order says pursuant to 622. It says dismissal with prejudice granted. Now, there – what am I missing? I asked that question. You're not judging. I think we're on the same page. The reason that the judge entered the order, though, is clear from the verbal order, is because she found that the statistical information was missing. I hope – maybe I'm just confusing myself. All right. Well, I mean, I don't – That was the basis for it. Okay. But her order indicates that she dismissed it for failure to comply with 622. But she didn't dismiss it because there was some violation of the time constraints. No, not at all. Within the statute. Or the sufficiency of it. She did not – you do not have a time – she did not say we were too late. She did not say it was good. It's clear from the transcript that the judge said this. She understood that we needed the information. She basically adopted your position, or the plaintiff's position, and said I can't provide this and, therefore, because I need this information, she says this information is privileged and you admit you can't provide it without it, therefore, you don't have it. Okay. But then I do go back to the other question that I had, and that was that these orders indicate a failure to comply. And all I'm asking you is that if we agree with your position that the documents relating to MRSA are not privileged, what is your response to every other aspect of the complaint that they move to dismiss for failure to comply with 622? What is your response that we should do to these other parts of the complaint that allege negligence that have nothing to do with the MRSA? Bad medical care, putting too – whatever. There are accounts in the allegations that don't have nothing to do with the MRSA. What precluded your clients from getting an expert as far as the other allegations of negligence? In all honesty, I believe if this Court reversed and remanded, those are probably going to drop out because I don't think we have any expert that's going to be able to rely on those. I think it's solely a statistical case. Okay. And I can't tell that to the Court because all I can suggest to the Court is that – Well, maybe the overarching aspect of this complaint is that if there was a spike in MRSA, then the – If there were too many MRSA infections in the hospital, then they should have told the doctors. All right, all right, I see. That's really the key to our case. If the trial court judge had addressed issues A, B, C, and D, we could have said yes, no, or we will amend, but we didn't ever get to that point. Well, what changed? It seemed like the judge was in agreement with the position of the plaintiffs that this kind of information is purely statistical without seeking patient information, just knowing how many cases there were. What changed suddenly that she went from A to Z? I have no idea. I've read the transcript. I obviously wasn't there, but everything's been reported. Where are the documents under seal? They're here, aren't they? They're filed with the Court. Are they here? There was some question about whether they were all here. I've never seen them, so I can't – but we signed stipulations and the defense counsel filed a motion to have them filed. Well, was that when everything changed? She did view them at one point. She had those documents early on. That did not change anything. I don't know. It was a change from night and day. We frankly thought we were prevailing, and every time that we came back to court, the judge says, you counted them for the committee. You can count them for these people. And then suddenly at the very end, the argument just moved. It moved beyond the question of statistics. It just moved into a general discussion, and if I recall correctly, the defense counsel told the court, look, we've given them all the discovery we can. We've given them lots of discoveries. As a matter of fact, at one point the defense counsel, I think, told the court, he can file an affidavit. The items that you were seeking in terms of what they gave to the court were somewhat related to a committee, weren't they? The information we saw was the rules and policies, and that we were given. You got the policy. Some of these documents are committee reports. I haven't seen them, but I strongly suspect they're probably privileged. What we did not get, and what I don't know if this court has seen, is just the numbers. And it turns out that's all our documents. But isn't what the judge got then what was privileged? Maybe that swayed her? No, because I don't think the judge got the numbers, and there's nothing in what she got that would have swayed her. Well, I think she got some information about MRSA that the committee had looked into. And I guess she was saying that was privileged. I don't know because I haven't seen the documents. The question really is whether the information that you wanted came by way of those privileged documents, and that's the only form that information could have come in. If it could have come in by way of other information that wasn't privileged, then perhaps the judge didn't see what could have been discoverable material. And I think that sounds almost plausible to me because the judge clearly knew what we wanted. She said, count the numbers and give it to them. And the hospital said, no, we will not do that. That's a direct response. And then at the end, the judge, in the very last ruling, the judge said, no, that information is protected. The judge said the documents are protected. We said we don't – that's why I don't want to say something that we admitted. We don't need those documents. We need the information. It's pretty clear what you wanted and what you needed from the amended affidavit, the position. In paragraph 7 of that affidavit. That's what you want. That's the core of what we need. I know. The rest of it is dressed up. I hate to say this, but it's true in lawyer language. We can't just do anything simply. We have to have the long affidavits. We need numbers. And as to the doctors, the doctor, the expert said, I need that information as to the doctors as well as to the hospital. That was why we did an amended affidavit. If you'll recall, there was a discussion when we came up with the first affidavit. They pointed out to us that the affidavit did not address whether the expert was going to assign this to the doctors and then the amended affidavit. We'll give you some time for rebuttal. Thank you very much, Your Honor. There are two appellees. Have you divided your time? Okay. May it please the Court. Jenny Blake on behalf of Advocate Christ Medical Center. I would actually like to address what changed because I was the attorney who created the record in the trial division. And what had changed is with all due respect to Judge Budzinski, I think that Judge Budzinski initially when we started the discussion about the 622 report and what we were required to produce or not required to produce, our position from the very, very beginning was it is a procedural requirement to proceed beyond the pleadings. And if we're going to conduct discovery, they need a 622 report. That was always the discussion. And you never backed off from that position? We never backed off from the position. Even though she made you back off? That's correct, Judge. Okay. But you don't think you can waive your argument by backing off? Not in any way. In fact, in every hearing repeatedly we said we are not issuing. It was really your first shot out of the cannon. And your initial 619 motion to dismiss was based on your argument that basically the only thing they were entitled to before filing the 622 were the personal records of the patient. And you had already given them those. That's correct, Judge. And the orders that she entered, in fact, state that she's dismissing under 2619 for failure to comply with 2622. Without question. That had always been what the issue was before her, and that's the basis for which she ruled. But are you arguing, then, that her dismissal was based on an agreement with you that no discovery was possible until the affidavit was filed?  Our position was always that the affidavit was possible. I know what your position was, but are you suggesting that the judge eventually came around to your position? I believe that at the end of the day, the plaintiff's attorney conceded that they could not get a 622 at any point in time. So at that point, the defense indicated that because they could never get a 622 report, that it was a goalpost. But they claimed that they could get a 622 if they had the requested information, and that's what the trial judge says. You're not entitled to this information, therefore you're not going to get it, and therefore you can't present a 622. So they're inextricably linked. You can't separate the two. Well, there's no way that the plaintiff can say that they would be able to comport with the requirements of 622 if they had that information. Well, what they are saying is that they need that information in order to at least have a chance of satisfying 622, and they're entitled to at least present their cause of action, see whether it stands. And that's exactly what the Woodard decision had dealt with, and in that case, we dealt with one anesthesiologist, and the plaintiff made exactly the same argument. They said, we need the records of that anesthesiologist to proceed forward. What the plaintiff in this case is doing, Advocate Christ Medical Center... How else are they going to get this information but from the advocate? How else could they ever obtain the information that they're seeking that perhaps during the six-month period, there was a spike in MRSA? How else are they ever going to get that without the assistance of advocate? And if there is a spike, then patients could go elsewhere for their treatment. They could postpone their treatment. How else can they ever get this information? And they are not looking for patient names. They're not looking for treatment. They want to know simply the number of MRSA infections from a specific period of time. The number of MRSA infections from any given period of time, that number does not exist at Epic. You cannot go to the hospital and look at a document that was created, for example, in the ordinary course of business or by some other method and come up with that number. That does not exist. The only reason... Well, I agree with you that the way to get the information would perhaps require review of patient information. But that doesn't require disclosure of that same information. Your Honor, just to put some perspective on the task at hand, Advocate Christ Medical Center is a facility that has 617 beds. It conducts nearly 1,000 surgeries per month. We're looking at a 6-month period of time where the staff... Just a minute. You're familiar with the Tomchak case. I am, Your Honor. And you're familiar with what the hospital resisted in turning over in that particular case, which was simply triage statistics for a specific day. Correct. And they eventually had to turn it over. You're saying that for the period that this particular plaintiff was a patient at Advocate, you couldn't produce a list of patients with their names redacted, that you contracted MRSA in that same time frame? That's correct, Your Honor. It doesn't exist? It does not exist outside of the Infection Control Committee. Wait a minute. Something has to be generated for them to look at. That's the point he's making in his brief. You keep moving the key from one shelf to another. Hold on. Let's take the example of the plaintiffs. Are you saying that their MRSA information didn't exist apart from this committee information that was being generated? I mean, the plaintiff's information that they contracted MRSA must exist. And if it exists for them apart from the committee-generated information, then the same situation has to exist for any other patient that may have contracted MRSA. Your Honor, the uncontradicted testimony of Karen, excuse me for the name of the person. Miller. I think it was Miller. Karen.  The nurse who signed the affidavit. Martin. Martin, thank you, Your Honor. Sorry. Karen Martin's uncontested deposition testimony, uncontested affidavit, without question, supports that that information does not exist. The only reason this infection disease statistics exist is because at the direction of the committee, as part of their investigation into infectious disease rates at the hospital, they compiled different infection rates, not necessarily MRSA, and they would have different parameters and different infections that they were studying where they would get the statistics for a given infection. Let's go back to Tomchak, because the triage data may not have existed in the sense that it exists independently of the patient information, but that information had to be disclosed nonetheless. And if this information exists, and it may not exist independently, but it exists and MRSA is so distinct that they know which of the many patients that may have been at their hospital during this time period contracted MRSA, I don't understand why that information can't be gathered and given. The difference between the Tomchak decision, because what was discoverable in that case, is the time of triage, the treatment time, and the acuity. That is not a medical judgment or decision that anybody was making. Well, let's say you just want the time that the patient contracted MRSA. Let's say you just want the date that the patient was treated, or just data information as opposed to any other. That information is a necessary violation of a patient's rights. So if you have check counts. You moved the goalpost. We're not talking about whether it's privileged or not at this point. We're talking about whether or not it was available independently of any committee action. And my response, Your Honor, is that it's not. Question. This is from the yellow brief, okay, filed by your opponent. Question to the nurse. Is there any information regarding MRSA infections between October 5th and January 13th, 2005-2006, available outside of the Infectious Control Committee? Answer, yes. Ms. Martin goes on to explain that the Center for Disease Control and the Medicare billing parameters for reporting infections are very different. The question has to be analyzed on each chart. Was it an infection that was present when the patient presented to the hospital? Was it an outbreak? The fact is you did have statistics for the number of MRSA outbreaks at the hospital. You would not be a very good hospital if you didn't have statistics. And why wasn't that disclosed under their discovery request? Your Honor, what they asked for is the statistics that the hospital had available with respect to infections. The only source for that information was the information that was gathered by the Infectious Control Committee. Okay. But what you're really basically saying is that information that's generated for use by the committee becomes privileged once the committee gets it. No. What I am suggesting, Your Honor, is that it didn't preexist. It did not preexist. And the Infection Control Committee specifically set up certain parameters and designated those parameters so that those would be investigated and then those statistics. But the data that they're requesting had to be on a computer someplace. Well, whatever parameters they set up. But you're saying that the moment they requested it becomes privileged. No. I'm saying that because of that. What if they hadn't requested it? If the statistics was something that was generated by the hospital in the ordinary course of their business. There you go. There you go. That's the problem. I don't see how you can take this position in the face of Tom Check and Webb.  It's the same argument they made with Webb. And you're lost on both of those where the appellate court made it clear that there's a distinction between information generated in the ordinary course of the hospital's business. And that has to do with what patients had MRSA while they were there. And information that is generated by the committees which is entitled to the medical records privilege. We've gone through this in Tom Check and Webb. How do you distinguish what they wanted from Tom Check and Webb? Well, in the Webb case, the documents that were created were created for dual purpose. They were created for purposes of improving patient care. But they were also created on their face for the purposes of evaluating litigation. And as your Honor and the court knows, that because of this dual purpose, what the court held is it was outside of the Medical Studies Act. And it was outside of the Medical Studies Act because there was this dual purpose. That's Webb. That's Webb. What about Tom Check? Tom Check involved the doctor-patient privilege. It's a different statute, but the purpose is somewhat. In Tom's Act, it wasn't. I wouldn't distinguish them on that basis. The physician-patient privilege was involved in Tom's Act. It's not directly involved here. But certainly if the court orders us advocate to go through 10,000 charts and evaluate those charts and determine whether those patients had MRSA, whether it was community-acquired, hospital-acquired. You wouldn't have to evaluate whether they had MRSA, would you? I mean, you didn't have to evaluate the plaintiffs to discover whether or not they had contracted MRSA. MRSA became part of their medical history. I mean, everybody knows that they had. That's really the difference and the essence of the importance of the difference between the Tom's Act case and what we're doing here. In Tom's Act, all they're doing is disclosing the times. It has nothing to do with physician-patient information. In this setting, what we would be required to do is go through the patient's charts. Somebody has to generate that information to determine whether the patient had MRSA, whether it was community-acquired, hospital-acquired. Was it acquired in a surgical suite? Was it acquired pre-op, post-op? It is a complex investigation. Somebody would have to evaluate those records, use medical judgment to determine where that MRSA came from. Did they come in with MRSA? Those statistics are not available. I think you've made yourself clear as to what your position is. Thank you. Thank you. May it please the Court. I'm Scott Howey. I represent the individual defendant doctors, Dr. Parikh and Dr. Gordon, in the Zangara case. And you know our concern regarding the doctors. It seems that the causes of action against them got pushed in with the cause of action or really the crux of the complaint against advocate. That's correct. And they've sort of been drawn up into this dispute that really the hospital primarily has with the plaintiff as to whether the hospital's information or documents are privileged or not. I don't believe that. You're all in the same lifeboat. In a sense, Your Honor, but I think there are. That's basically your opponent's argument, too, though, isn't it? In order to find out whether or not your clients were in any way negligent, they need the hospital information with respect to the MRSA outbreaks, assuming that then they could link together your knowledge of the MRSA outbreaks and then, well, you know, you're a lawyer. You know what would happen after that. But that the two are linked and that they couldn't really provide an affidavit, a 622 affidavit, suggesting negligence on behalf of the But that link, Justice Cahill, is never made explicit anywhere in the record on appeal. When you're in discovery, how explicit do they have to be? Well, certainly they have to be explicit enough to say in their expert's affidavit, the affidavit that he was able to provide, the one that says I can't provide the other affidavit. Well, basically what he says is that without this information I can't provide an opinion that the standard of care was violated by the doctors unless I know what information the doctors possessed with respect to the patient. But then he goes on to say in the very next paragraph. Remember, we're in discovery now. He's not in front of a jury trying to argue that your clients are negligent. I understand, of course. He's asking the court to give him information. Exactly. It's only the possession of the hospital, but would they impact on your client's behavior. And what he felt he needed to say, and we agree that he needed to say this. And vindicate your clients. Potentially. Potentially. But what he needed to say and what he seems to agree that he needed to say was that if he had certain information, it would be likely he could state a cause of action against the defendants. And what he says, after saying that I can't provide the necessary opinion as to the individual defendants, he goes on to say in the very next paragraph, it is likely that there would be a meritorious cause of action against Advocate Christ Medical Center due to plaintiff's acquisition of MRSA. And not that there is the likelihood of a meritorious. But this is a preliminary affidavit. This is a 6-2-2. That's correct. This is his explanation for why he can't do a 6-2-2. And it's his second explanation. Well, I'm saying that that's some kind of a judicial admission on his part that he has already written off the doctors as negligent if he gets this information. Well, what does he say again? Why don't you repeat that? There is a difference between the one and the other. And I think if I want to put this affidavit in context first, but bear in mind this is the second of two affidavits. Clerical error in the first apparently prevented, meant that they did not say in the first affidavit anything about the doctors. And corrected that affidavit in this amended one to say for the first time that without the aforementioned data, that's referring to the information they're seeking, it is impossible to determine whether the individual defendants deviated from any standard of care in their treatment of plaintiff while a patient at Advocate Christ. And in the next paragraph, he simply says, it is likely that there would be a meritorious cause of action against Advocate Christ Medical Center, no one else, due to plaintiff's acquisition of MRSA while a patient at Advocate Christ. Let me just interrupt real quickly. The standard of care that was just discussed in that previous alleged case, does it suggest that the standard of care would, of the doctors would turn on whether or not they were aware of some sort of MRSA outbreak in the hospital? And is that a standard of care that is similar to any standard of care that you're familiar with? I mean, to me, that's the force of that allegation, that somehow the standard of care that the doctors would have to follow in treating this patient somehow is affected by this unknown, perhaps, MRSA outbreak to these doctors, and maybe the standard of care would impose upon them an obligation to find out before they engage in this. And I'm not sure that there's any such standard of care, or similar standard of care. Classic type of thing, operating theater. The doctor is walking into the operating theater to perform surgical procedure on this patient, and the nurses say, Doctor, we've just gotten some information that the last six patients operated on in this theater have contracted MRSA. Do you think that doctor is going to go ahead with the surgery in that theater? Of course not. What if he doesn't get that information? If he doesn't get that information and he performs the surgery to the best of his ability within the standard of care that another doctor would be, have to follow as well, every other doctor would have to follow as well, why should it matter that the nurse didn't provide that information, even though it may have been true? I mean, for him. I think there are serious standard of care questions raised by whether this affidavit is even sufficient. Here's the question I really have for you. The 622 argument regarding whether or not they could go forward, it seemed to have turned on advocate, on the privilege information regarding advocate. The absence of the 622, I don't know that the trial judge linked it to the doctors. And did your position ever link, or did you ever claim that the privilege information could not be disclosed against the doctors? Our position, I think, is somewhat more simple than the hospital's was. We join the hospital's motion and we have the same arguments. But our argument boils down, in essence, to the fact that the caboose is a very important part. My eight-year-old son will tell you it's his favorite. Well, me too. I know all about cabooses. I was eight years old once, too. Weren't we all? The argument of all defendants was the complaint should be dismissed because there's no 622 affidavit. And everything that has followed since that motion has concerned what the justification for that omission is. There's no dispute there is no 622 affidavit. That's clear. Nobody argues about that. The question is whether that is an excusable omission or something that can be remedied. And I think the plaintiff has acknowledged that given the limitations placed on him by the circuit court, it cannot be remedied. And so the question then boils down even more narrowly to the question of whether those limitations are important or are valid ones. And it's important to recognize that that question has no bearing on certain aspects of the plaintiff's complaint. And some of the questions that Justice McBride posed to the plaintiff and to my co-counsel address that very concern. Let me ask you, what if we disagree with the trial judge and say that certain information is disclosable? How does that, what sort of, in light of that hypothetical ruling by this court, how does that impact your client's case? That has a significant impact on the case against the doctor defendants and even against part of the hospital. We know it has impact against the hospital. How does that impact your client? As to all defendants, it still means that there are certain aspects of the issue affidavit, even in the absence of the privileged material. There are aspects of this complaint, as Justice McBride and I believe yourself have observed. I'm just thinking out loud. How are, how would this information about the doctors, whether they had, I mean, we don't know at all whether there was a spike or not. But if there was any investigation regarding, you know, knowledge of that, but that was done in the course of peer review, I mean, I think that information perhaps would be privileged. I think our point is that even if it's privileged, pardon me, even if it's not privileged and is disclosable, there are aspects of the complaint that concern treatment post-contraction of MRSA. There are aspects of the complaint that concern what the doctors allegedly did after the plaintiff contracted MRSA. And those treatment allegations, as opposed to the initial contraction allegations, are unaffected by the rates at which MRSA was contracted. Well, that's part of your argument, or maybe it was the argument of your colleague, that all of this discovery aside, there was a trap door they had on 622. They could have filed a res ipsa locator count against both the doctor and the hospital. Well, they did file a res ipsa locator count against one of the doctors. Yeah, one of them. And that should survive without regard to at least survive an issue. Well, except that the statute, the code requires that the expert certify that this is a proper case for res ipsa locator. And there's no indication from the affidavit that the absence of the privileged information is preventing him from doing that. So that is yet another reason that the res ipsa locator dismissal ought to be affirmed regardless of what this court holds. Well, you know, it could have been a strategic decision on the part of the plaintiff's counsel, too, to go the route they're going. I suspect you are aware of that possibility. They could have, for example, dropped the hospital and then just called them in as a respondent in discovery and perhaps gotten all of the information, again, subject to the possibility of privilege. But certainly the 622 issue would be set aside if they had simply dropped them or not initially named them as a defendant. They could have proceeded on a respondent in discovery theory. Or another thing they could have done was to present the 622 affidavit as to those aspects of their claim that did not turn upon statistical information. I mean, who knows what goes on in the mind of a plaintiff's lawyer? I don't. I mean, why they decided to go the way they went is. Well, if, for example, there was a sudden spike in that information, the hospital had that information, but not necessarily, it wasn't necessarily disseminated to the doctors, then, I mean, there's certainly a reason to include all in this as opposed to having the hospital be a. I'm wondering how the information about the knowledge, anyway. And that's really why I'm asking. Because it seems like we have a very narrow issue in whether or not the material is privileged. And if it is, if we say that it's not privileged or at least some of it isn't privileged, we want to remand. But do we remand the entire case, including the cases, the causes of action against your client doctors, and let that sort of thing get sorted out down below? Or do you think that we, based on the posture of this case, how this case came before us, whether we can separate advocate from the doctors and affirm as to the doctors and reverse as to advocate only? That's my question, really. There's no reason at all, Your Honor, why you, if you were to find this material not to be privileged, that you could not remand as to the hospital alone and affirm the dismissal of the doctor defendants. Because the doctor defendants But that could be done down below as well, couldn't it? It could have been done earlier. Well, it could be done on remand as well. It's certainly possible it could be done that way. There's no procedural bar to it. But there's no reason to do that. Because all those things could have been sorted out previously. The 62 affidavit could have been provided as to those aspects that did not turn upon statistical privileged information. So regardless of what this Court were to find as to whether that material is non-hospital defendants, Dr. Parikh and Dr. Gordon, in this case, in the Zegara case, ought to be affirmed. All right. Thank you very much. Thank you. Justice Cahill prompted this question for me because there were other avenues the plaintiffs could have followed to maybe even have avoided this case as it stands before us. That is, use the respondents in discovery and maybe file an action against the doctors only. And then try to get the information. And then if they have information regarding a spike, then you bring in the hospital. And so why should we, you know, sort of adopt your approach to this case and use it to expand what you might otherwise have gotten or been able to demonstrate a little stronger? Had you proceeded by way of a different means? We actually did open this case with a respondent in discovery case. And it basically morphed or merged into this case. And the trial court judge moved us in this direction, frankly. We would have obviously, I think, received the same response in the respondent in discovery. Were you running out of your statute of limitations time on the respondent in discovery? Is that what happened? I don't know. I can't answer that. I suspect the problem was, actually, I just don't know the answer to that. I have to guess. Going back to the caboose. We would have had the same problem. They would have not given it to us then for the same reasons. The doctors may not be a caboose as much as a separate, smaller train way behind the big train. It depends on what that distance is. Why do you do that? Because it seems to me that if you really had a cause of action against the doctors. If there was something with the doctors other than MRSA, we could have filed a separate 2622 report.  And I agree. I hate to say it in defense. Let's say we think that there is still a question regarding whether the data or the information being sought was discoverable. What do we do with the doctors? From my perspective, and I think this is logical, would be to remand it and have the trial court judge sort it out. Because that question is not a question that the trial court judge was asked to address when they got into the case. And that includes the local county, even though that could have proceeded without? And even that, as I understand it, the doctor said he couldn't proceed without the data on any point. And in paragraph 10C, the FVN specifically mentions the doctors. I just wanted to point that out to the court. One thing before you. What is your response to the 622? The order says it was dismissed for failure to comply with 622. Putting aside the other aspects of this that don't have to do with MRSA, how do you respond to the 622? How do you respond to Woodard? What is your response here? In Woodard, the plaintiff was able to file a 2622, and the trial court simply found that the information in it was insufficient. We can't even get that far. That's why Woodard doesn't apply. And the court gave us permission to do the discovery. But the statute has been interpreted as effecting procedure prior to the court having jurisdiction. It's a necessary condition that you support the complaint with the 622, which you did not do in this case. Except that Woodard said that Woodard stopped at that point without recognizing that there's more to the rule than what the defense counsel cited to the trial court. And the rest of the rule says that without leave of court. And we got leave of court to get this information. And so that's never been an issue. Nobody has said that the trial court here did not have authority to give us more time. I don't understand. There's no citation for that other than the Woodard case. That was not the basis for the trial court's decision. Well, why is it in both orders? That's what I don't understand. Because the 2622 and the MRSA is – She said part of her ruling was that she had given you all the time that there was to give. She said that, didn't she? No, her final ruling was specifically the documents are privileged. We said we don't need the documents. We need the statistics. And she said my ruling is the same as the statistics. That's the oral ruling. That's her explanation. This order is simply a shorthand for what she said there. And I don't quarrel with the order. That's how I would have entered the order. But we know why she did it. To advise the court, I am going to check with trial counsel. If there's any way that we can make the court's task easier by eliminating some charges in that complaint, I will advise the court within seven days. I can't do that without finding out that there are things I don't know. Other than that, unless the court has further questions, obviously, you've explored the issues. I don't think we're putting anybody under any obligation to supplement the record in any way whatsoever. I think we've got enough to decide. Thank you for your attention. Thank you. Counsel, on both sides.